UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DELTA L. EADY,

                                   Plaintiff,

v.                                                              9:05-CV-0824
                                                                (NAM/GHL)

HARLEY G. LAPPIN, et al.,

                                   Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

DELTA L. EADY
Plaintiff *pro se*
4414 Grand Avenue
Chattanooga, TN 37410

HON. ANDREW M. CUOMO                          CHARLES E. ROBERTS, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action has been referred to me for Report and

Recommendation by the Honorable Norman A. Mordue, Chief United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this

Court.  Plaintiff Delta L. Eady has sued 67 named current or former employees of the Federal

Bureau of Prisons, the Bureau of Prisons itself, and three Doe Defendants for a litany of alleged

"malicious and sardonic" violations of Plaintiff's constitutional rights.[1]  The typed complaint,

which is 68 pages and more than 339 paragraphs long, is a nearly daily accounting of every slight

that Plaintiff suffered from July 25, 2002, when he arrived at FCI Ray Brook, to October 10,

2003, when he was transferred to a different facility.

       Currently pending is the motion of 40 Defendants[2] to dismiss the complaint or for

summary judgment[3].  (Dkt. No. 79.)  Plaintiff has not opposed the motion, despite having been

_____

[1]      None of the defendants has answered the complaint.  Thirty defendants have never been served.  The complaint also discusses ten individuals (Cloud, Bartlemus, Bickman, Mrs. Copeland, Goodin, Cochran, John Doe, Pelletier, Fluger, and Beregevin) who were neither listed as defendants nor served.

[2]      Three of these defendants - Evans, Fitzgerald, and the Department of Prisons - were served but are not listed in Defendants' notice of motion or on the first page of their memorandum of law as "defendants who have been granted Department of Justice representation."  Because both Evans and Fitzgerald were listed as parties represented by the Department of Justice in their earlier motion to dismiss (Dkt. No. 59), I have assumed that the omission of their names from the current documents is a clerical error and that they are moving for summary judgment.

[3]      Although Defendants' motion is technically a motion to dismiss because they have not yet answered the complaint, I find that it is appropriate to treat it as a motion for summary judgment, thus allowing me to consider matters outside the pleadings.  "While 'a district court ordinarily must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading,' the central inquiry in a conversion determination is whether the non-movant 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings.' *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999) (citations and internal quotation marks omitted). 'Notice [of conversion] is particularly important when a party is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues.' *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir.1983). However, 'a District Court need not advise a *pro se* litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice, or where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment.' *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 621 (2d Cir.1999) (citations omitted)." *Mathie v. Dennison*, No. 06 Civ. 3184, 2007 U.S. Dist. LEXIS 60422, at *31, 2007 WL 2351072, at * 10 (S.D.N.Y. Aug. 16, 2007).  Here, Defendants' motion clearly refers to the

advised of the consequences of failing to do so, and having been granted an extension of the deadline by which to do so.  ( Dkt. No. 83.)  For the reasons that follow, I recommend that Defendants' motion be granted.

## I.     APPLICABLE LEGAL STANDARDS

### A.     Legal Standard Governing Unopposed Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[5]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts

---

motion as a motion for "[d]ismissal or in the alternative for summary judgment."  The motion is accompanied by several affidavits and other documentary evidence.  On October 20, 2008, I issued an order granting Plaintiff an extension of time in which to respond to the motion. In that order, I repeatedly referred to Defendants' motion as a "motion for summary judgment" and advised Plaintiff of the consequences of not responding to the motion.  (Dkt. No. 83.)  Thus, Defendants provided Plaintiff with the requisite notice *and* the record makes clear that Plaintiff understood the nature and consequences of summary judgment.

[4]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[5]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

showing that there is a genuine issue for trial."[6]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[7]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

What this burden-shifting standard means when a plaintiff has failed to respond to a defendant's motion for summary judgment is that "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."[9] Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the defendants.[10]

---

[6]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[7]      *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[8]      *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) (internal quotations omitted) (emphasis added).

[9]      *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

[10]      *See Champion*, 76 F.3d at 486 ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v.*

4

However, the plaintiff's failure to respond to the defendant's motion for summary judgment lightens the defendant's burden on the motion.

More specifically, where a plaintiff has failed to properly respond[11] to a defendant's statement of material facts, contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true[12] to the extent that (1) those facts are supported by the evidence in the record,[13] and (2) the non-moving

---

*Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims"). This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."* N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

      [11]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statements of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."). To create a dispute of material fact, it is not sufficient that the non-movant merely challenge the veracity or form of one or more of the movant's supporting affidavits. *See Chemical Bank v. Hartford Acc. & Indem. Co.*, 82 F.R.D. 376, 378 (S.D.N.Y. 1979); *Hofmann v. John Hancock Mu. Life. Ins. Co.*, 400 F. Supp. 827, 831, n.5 (D. Md. 1975).

      [12]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.") [emphasis in original].

      [13]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . . If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n

party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.[14]  Here, Plaintiff has been advised of the potential consequences of failing to respond.  (Dkt. No. 83.)

Similarly, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[15]

---

determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant.  To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

14       *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

15       N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an

Stated another way, where a defendant has properly filed a memorandum of law (in support of a

properly filed motion for summary judgment), and the plaintiff has failed to respond to that

memorandum of law, the only remaining issue is whether the legal arguments advanced in the

defendant's memorandum of law are *facially meritorious*.[16]   A defendant's burden in making legal

arguments that are facially meritorious has appropriately been characterized as "modest."[17]

---

adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added]; *see*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

[16]      *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *accord*, *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[17]      *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)]; *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *cf. Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted

Implied in the above-stated standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[18] This is because even *pro se* plaintiffs must obey the Court's procedural rules.[19]  For example, this Court has rather consistently enforced Local Rule 7.1(a)(3) (and its predecessor, Local Rule 7.1[f]), by deeming facts set forth in a moving party's statement to have been admitted where the opposing party has failed to properly respond to that statement–even where the opposing party

---

defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[18]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[19]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license . . .  not to comply with relevant rules of procedural and substantive law."); *Edwards v. I.N.S.*, 69 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") [citations omitted].

was proceeding *pro se* in a civil rights case.[20]

However, in the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[21] That having been said, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge."[22] An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[23] In addition, such an affidavit

---

[20]    *See*, *e.g.*, *DeMar v. Car-Freshner Corp.*, 49 F. Supp.2d 84, 86 & n.1 (N.D.N.Y. 1999) (McAvoy, C.J.) (*pro se* civil rights case); *Costello v. Norton*, 96-CV-1634, 1998 WL 743710, at *1, n.1 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.) (*pro se* civil rights case); *Squair v. O'Brien & Gere Eng'rs, Inc.*, 96-CV-1812, 1998 WL 566773, at *1, n.2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.) (*pro se* civil rights case); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1[a][3], in *pro se* civil rights case).

[21]    *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[22]    Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[23]    *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's]

(or verified complaint) must not be conclusory.[24]  An affidavit is conclusory if, for example, its

assertions lack any supporting evidence or are too general.[25]  Finally, even where an affidavit (or

verified complaint) is nonconclusory, it may be insufficient to create a factual issue where it

possesses the following two characteristics: (1) it constitutes almost the sole or exclusive basis

for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by

any other direct evidence); and (2) it is so lacking in credibility that, even after drawing all

inferences in the light most favorable to the non-movant, no reasonable jury could find for the

non-movant because the testimony is incomplete and/or replete with inconsistencies and

---

affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[24]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[25]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

improbabilities.[26]

### B.    Legal Standard Governing Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  It has long been understood that a defendant may base such a motion on either or both

of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil

Procedure 8(a)(2);[27] or (2) a challenge to the legal cognizability of the claim.[28]

---

[26]    *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("[I]n
the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much
of which is contradictory and incomplete, it will be impossible for a district court to determine
whether . . . there are any 'genuine' issues of material fact, without making some assessment of
the plaintiff's account. . . .  In the circumstances presented in the instant case-where (1) the
District Court found nothing in the record to support plaintiff's allegations other than plaintiff's
own contradictory and incomplete testimony, and (2) the District Court, even after drawing all
inferences in the light most favorable to the plaintiff, determined that no reasonable person could
believe Jeffreys' testimony, . . . we hold that the District Court did not err by awarding summary
judgment.  Because no reasonable person would undertake the suspension of disbelief necessary
to give credit to the allegations made in the complaint, . . . conclude that summary judgment was
appropriate.") [internal quotation marks and citations omitted]; *cf. Argus, Inc. v. Eastman Kodak
Co.*, 801 F.2d 38, 42-46 (2d Cir. 1986) (affirming grant of summary judgment to defendants in
part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line
[1] was "unsupported by documentary or other concrete evidence," and indeed was contradicted
by the other record evidence, and [2] was "conclusory" and "inconsistent" with plaintiffs' present
representations); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612-15 (S.D.N.Y. 2004)
(plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for
summary judgment where that testimony [1] recounted specific allegedly sexist remarks that
"were either unsupported by admissible evidence or benign," and [2] were inconsistent with
plaintiff's other statements and claims), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported
decision, cited not as precedential authority but merely to show the case's subsequent history, in
accordance with Second Circuit Local Rule § 0.23).

[27]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed.
2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the
sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v.
Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the
formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P.

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[29]  The main purpose of this rule is to "facilitate a proper decision on the

---

8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[28]     *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[29]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

merits."[30]  A complaint that fails to comply with this rule "presents far too heavy a burden in

terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis

for the Court to assess the sufficiency of [plaintiff's] claims."[31]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2)

as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

requirements that exceed this liberal requirement.[32]  However, it is well established that even this

liberal notice pleading standard "has its limits."[33]  As a result, several Supreme Court and Second

Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading

---

[30]     *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[31]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.)  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[32]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[33]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

standard.[34]

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing

an appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-

46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." 127 S. Ct. 1955, 1968-69[35] (2007).[36]  Rather than turning on the

*conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns

on the *plausibility* of an actionable claim.  *Id*. at 1965-74.

_____

[34]       *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-
1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*,
125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom
Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d
206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit
affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See*, *e.g.*, *Salvador v.
Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.
26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting
Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of
the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the
continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit
interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on
summary affirmances because "they clearly acknowledge the continued precedential effect" of
*Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the
Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[35]       All citations to the *Bell Atlantic* decision will be to the S.Ct. cite rather than the
U.S. cite because page numbers are not available for the U.S. version.

[36]       The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival."  *Bell Atlantic*, 127 S. Ct. at 1969.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id*. at 1965, n.3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic*).[37] The Second Circuit has also recognized that this *plausibility* standard governs claims

---

[37]     *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

15

brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[38]

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim.  *Bell Atlantic*, 127 S. Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]).  That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[39]  There must still be enough facts alleged to raise a right to relief above the

---

[38]     *See*, *e.g.*, *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

[39]     For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm."  127 S. Ct. at 2199.  The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8 and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was

16

speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[40]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[41]  In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of

---

"endangering [his] life" and that he was "still in need of treatment for [the] disease."  *Id*. at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need.  The *Erickson* decision had to do with only the first element, not the second element.  *Id*. at 2199-2200.  In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication.  *Id*.  This point of law is hardly a novel one.  For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[40]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[41]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[42]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[43]  Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[44]  Of course, an opportunity to

----

[42]    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[43]    *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[44]    *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

18

amend is not required where the plaintiff has already amended his complaint.[45]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[46]

However, while this special leniency may somewhat loosen the procedural rules

governing the form of pleadings (as the Second Circuit has observed),[47] it does not completely

_____

[45]       *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2
(E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended
complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384
(S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[46]       *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation
omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of
course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint
should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)
[citation omitted]; *see*, *e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7
(N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error
in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS'
established grievance process–was substantive and not formal in nature, rendering repleading
futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors
in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and
not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob
Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff
opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because
the errors in his complaint–which included the fact that plaintiff alleged no violation of either the
Constitution or laws of the United States, but only negligence–were substantive and not formal in
nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D.
Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his
complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the
defendants were protected from liability by Eleventh Amendment immunity–was substantive and
not formal in nature, rendering repleading futile).

[47]       *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5
(2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally]
entails, at the very least, a permissive application of the rules governing the form of pleadings.")
[internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d
Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of

relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[48]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[49]  Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[50]

## II.   ANALYSIS

### A.   Failure to Serve Defendants

Twenty-seven named Defendants have never been served with the complaint.  In addition,

---

important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[48]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[49]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[50]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

the three Does listed in the complaint have never been identified or served.  I recommend that the Court dismiss these Defendants *sua sponte*.

Under the Federal Rules of Civil Procedure, a defendant must be served with the summons and complaint within 120 days after the filing of the complaint.  Fed. R. Civ. P. 4(m). This 120-day service period is shortened, or "expedited," by the Court's Local Rules of Practice (and the Court's General Order 25), which provide that all defendants must be served with the summons and complaint within sixty (60) days of the filing of the complaint.  N.D.N.Y. L.R. 4.1(b) [emphasis added].  Here, more than 120 days have elapsed since the filing of the complaint and twenty-seven named Defendants and the three Does have not been served.  As a result, Plaintiff is in violation of both the Federal Rules of Civil Procedure and the Local Rules of Practice for this Court.  I therefore recommend that all claims against  Michael Nally, D.B. Drew, W.A. Sherrod, C. Chester, C. Sullivan, R. Halladay, Cink, Dobson, Smith, Macnerland, Johnson, Winger, C. Williams, D. Riehle, Silva, P. Shipman, Lovett, Brown, E. Brown, Hart, Poirer, Desileps, Dumas, B. Shull, Babcock, Mina, Phillips, James Doe, Jim Doe, and Jerry Doe be dismissed.

### B.    Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has not exhausted his administrative remedies as to several claims.  (Defs.' Br. at 16-18.)  Defendants are correct.

The Prison Litigation Reform Act ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted."[51]  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."[52]

      "[P]risoners must 'complete the administrative review process in accordance with the

applicable procedural rules.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v.

Ngo*, 548 U.S. 81, 88 (2006)).  The procedural rules are "defined not by the PLRA, but the prison

grievance process itself.*"  Id*.  Federal inmates must exhaust the four steps of the Board of

Prison's administrative review process.  "The first step require[s] inmates to present an issue of

concern informally to the prison staff so that they [can] attempt to resolve it.  If the issue

remain[s] unresolved, the inmate [can] submit a formal written Administrative Remedy Request

to the institution staff member designated to receive such requests."  *Johnson v. Rowley*, 569

F.3d 40, 45 (2009) (citations and punctuation omitted).  At Ray Brook, where Plaintiff was

housed during the relevant period, the designated staff member is the Warden.  (Bingham Decl. ¶

2.)  "The inmate [can] appeal any adverse decision made [by the Warden] to the Regional

Director, and then to the BOP's General Counsel."  *Johnson*, 569 F.3d at 45 (citations and

punctuation omitted).

      If a prisoner has failed to exhaust his administrative remedies, the Second Circuit has

held that a three-part inquiry is appropriate.[53]  First, "the court must ask whether [the]

---

[51]     42 U.S.C. § 1997e.

[52]     *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[53]     *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).  The
Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's
decision in *Woodford*.  *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, at *4,

administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[54]

Second, if those remedies were available, "the court should . . . inquire as to whether [some or all

of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to

raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's]

exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's

failure to exhaust as a defense."[55]   Third, if the remedies were available and some of the

defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the

Court should consider whether 'special circumstances' have been plausibly alleged that justify

the prisoner's failure to comply with the administrative procedural requirements."[56]

Defendants argue that Plaintiff has failed to exhaust the following claims (Defs.' Br. at

17-18):

Plaintiff alleges that Defendant Fitzpatrick destroyed a grievance that Plaintiff attempted

to file regarding "the April 2, 2003, incident with Plaintiff's mail."  (Compl. ¶ 175.)  Plaintiff

filed a grievance regarding Fitzpatrick's actions but did not pursue it beyond the Warden.

(Bingham Decl. Ex. 1-d.)   Therefore, Plaintiff did not exhaust his administrative remedies

regarding his claim against Defendant Fitzpatrick.  The record before the Court does not indicate

that any of the *Hemphill* factors apply to save the cause of action.  Accordingly, I recommend

that the Court dismiss this claim for failure to exhaust.

---

2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

[54]      *Hemphill*, 380 F.3d at 686 (citation omitted).

[55]      *Id.* [citations omitted].

[56]      *Id*. [citations and internal quotations omitted].

Plaintiff alleges that Defendant Evans[57] destroyed a grievance that Plaintiff attempted to file regarding Defendant Snyder's interference with Plaintiff's work assignment and schedule. (Compl. ¶ 206.)  Plaintiff filed a grievance regarding Defendant Evans' actions but did not pursue it beyond the Warden.  (Bingham Decl. Ex. 1-d.)  Therefore, Plaintiff did not exhaust his administrative remedies regarding his claim against Defendant Evans.  The record before the Court does not indicate that any of the *Hemphill* factors apply to save the cause of action. Accordingly, I recommend that the Court dismiss this claim for failure to exhaust.

Plaintiff alleges that on April 22, 2003, Defendant Pickreign, acting as a disciplinary hearing officer, found Plaintiff guilty of disciplinary charges filed by Defendants Synder and Halladay "despite his knowledge of the[ir] misconduct and the violations of the Plaintiff's civil rights." (Compl. ¶ 219.)  In Paragraphs 231-232 of the complaint, Plaintiff alleges that he appealed Defendant Pickreign's decision to the Regional Director, Defendant Ray.  (Compl. ¶ 231.)  Prison records confirm that Plaintiff filed a grievance about this event and appealed it  to the Regional Director.  He did not appeal to the General Counsel.  (Bingham Decl. Ex. 1-d.) Therefore, Plaintiff did not exhaust his administrative remedies regarding his claim against Defendant Pickreign.  The record before the Court does not indicate that any of the *Hemphill* factors apply to save the cause of action.  Accordingly, I recommend that the Court dismiss this claim for failure to exhaust.

Plaintiff alleges that on May 5, 2003, Officer Synder told him that he could no longer use

---

[57]        Defendant Evans was served with the complaint.  (Dkt. No. 56.)  He was listed as one of the moving parties in Defendants' unsuccessful motion to dismiss.  (Dkt. No. 59.)  He is not listed in either the notice of motion or the first page of Defendant's memorandum of law as a "defendant ... granted Department of Justice representation."

the office to take a break from prolonged standing.  (Compl. ¶ 223.)  Minutes later, the plaintiff

was asked by a staff member to help carry heavy construction equipment.  (Compl. ¶ 224.)

Defendant Hamilton told Defendant Hart[58] to "go ahead and write his ass up, I am sick of him."

(Compl. ¶ 225). Plaintiff was then apprehended and confined to the SHU.  (Compl. ¶ 225.)

Prison records indicate that Plaintiff filed a grievance about this incident with the Warden but did

not pursue it beyond that level.  (Bingham Decl. Ex. 1-d.)  Therefore, Plaintiff did not exhaust his

administrative remedies regarding his claim against Defendants Synder, Hamilton, and Hart.  The

record before the Court does not indicate that any of the *Hemphill* factors apply to save the cause

of action.  Accordingly, I recommend that the Court dismiss this claim for failure to exhaust.

Plaintiff alleges that Defendant Liberty misdiagnosed Plaintiff's foot ailment.  (Compl. ¶

235.)  Prison records indicate that Plaintiff filed a grievance about this incident with the Warden

but did not pursue it beyond that level[59].  (Bingham Decl. Ex. 1-d.)  Therefore, Plaintiff did not

exhaust his administrative remedies regarding his claim against Defendant Liberty.  The record

before the Court does not indicate that any of the *Hemphill* factors apply to save the cause of

action.  Accordingly, I recommend that the Court dismiss this claim for failure to exhaust.

Plaintiff alleges that Officers Synder, Lovett[60], and John Doe[61] seized administrative

---

[58]     Defendant Hart was never served with the complaint.  Accordingly, as discussed
above, I recommend that all claims against him be dismissed.

[59]     Defendants assert that the number assigned to this grievance was 304214.  It
appears that the proper number is 306148.

[60]     Defendant Lovett was never served with the complaint.  Accordingly, as discussed
above, I recommend that all claims against him be dismissed.

[61]     The complaint does not list John Doe as a defendant.

remedy forms and stamps from Plaintiff.  (Compl. ¶ 238.)  Prison records indicate that Plaintiff

filed two grievances about this incident with the Warden but did not pursue them beyond that

level.  (Bingham Decl. Ex. 1-d.)  Therefore, Plaintiff did not exhaust his administrative remedies

regarding his claim against these defendants.  The record before the Court does not indicate that

any of the *Hemphill* factors apply to save the cause of action.  Accordingly, I recommend that the

Court dismiss this claim for failure to exhaust.

Plaintiff alleges that Defendant Boutin wrongfully created a procedure that limited SHU

inmates to purchasing food items from the commissary twice a month.  (Compl. ¶ 263.)  Prison

records indicate that the Warden received and rejected a grievance on this issue on July 29, 2003.

Plaintiff did not pursue the matter further.  (Bingham Decl. Ex. 1-d.)  Therefore, Plaintiff did not

exhaust his administrative remedies regarding his claim against Defendant Boutin.  The record

before the Court does not indicate that any of the *Hemphill* factors apply to save the cause of

action.  Accordingly, I recommend that the Court dismiss this claim for failure to exhaust.

Plaintiff alleges that Defendants Burdt and Dooley issued a misbehavior report to him for

failing to remove paper coverings from the lights in his cell, despite Plaintiff informing Burdt

that the lights caused him anxiety and headaches.  (Compl. ¶ 264.)  Plaintiff also alleges that

from May 15, 2003, to July 22, 2003, he was subjected to harsh conditions including constant

lighting in his cell, a cold food diet, and a toilet that could not be flushed from inside the cell.

(Compl. ¶ 289.)  Prison records indicate that Plaintiff submitted two grievances that may have

discussed this incident: (1) a grievance  regarding the headaches caused by the bright light; and

(2) a grievance alleging staff misconduct during a cell inspection.  Plaintiff submitted the first

grievance to the Warden, but did not pursue it further.  He submitted the second to the Regional

Director, but did not pursue it further.  (Bingham Decl. Ex. 1-d.)  Therefore, Plaintiff did not exhaust his administrative remedies.  The record before the Court does not indicate that any of the *Hemphill* factors apply to save the cause of action.  Accordingly, I recommend that the Court dismiss this claim for failure to exhaust.

Plaintiff alleges that Defendant Liberty refused to refill his prescription.  (Compl. ¶ 268.) Prison records indicate that Plaintiff filed a grievance about this incident with the Warden but did not pursue it beyond that level.[62]  (Bingham Decl. Ex. 1-d.)  Therefore, Plaintiff did not exhaust his administrative remedies regarding his claim against Defendant Liberty.  The record before the Court does not indicate that any of the *Hemphill* factors apply to save the cause of action. Accordingly, I recommend that the Court dismiss this claim for failure to exhaust.

Plaintiff alleges that Defendant Boutin failed to provide him with a "formal Segregation Review Official" ("SRO") despite his repeated requests.  Plaintiff alleges that Defendant Boutin later forged forms to make it appear that Plaintiff received the review while he was confined to the SHU.  (Compl. ¶ 284.)  Plaintiff alleges that on June 16, 2003, Defendant Boutin destroyed a grievance that Plaintiff attempted to file with him regarding the failure to provide a SRO review. (Compl. ¶ 262.)  Plaintiff alleges that on August 13, 2003, Defendant Drew destroyed a grievance that Plaintiff submitted to him regarding the failure to provide him with a SRO. (Compl. ¶ 323.)  Prison records indicate that on October 3, 2003, Plaintiff filed another grievance regarding the failure to provide a SRO with Defendant Drew, which was not destroyed.  Prison records indicate that Plaintiff did not pursue his administrative remedies any further.  (Bingham

---

[62]      Defendants assert that this grievance was assigned number 306148.  It appears that the proper number is 304214.

Decl. Ex. 1-d.)  Therefore, Plaintiff did not exhaust his administrative remedies regarding his

claim that he did not receive a SRO.  The complaint does not allege that Defendant Drew or other

staff took any actions to discourage Plaintiff from pursuing the October 3, 2003, rejection to the

Regional Director or the General Counsel.  The record thus does not indicate that any of the

*Hemphill* factors apply to save the cause of action.  Accordingly, I recommend that the Court

dismiss these claims for failure to exhaust.

### C.    Personal Involvement

Defendants argue that several Defendants must be dismissed because they were not

personally involved in any alleged constitutional violation.  (Defs.' Br. at 11-16.)  Defendants are

correct.

#### 1.    Defendants As to Whom the Complaint is Silent

The caption of the complaint lists several Defendants (Kim White, Cink, Dobson, L.

Winger, D.C. Maloney, E. Brown, Besaw, Van Yserloo)  about whom the body of the complaint

says nothing.  As discussed above, Defendants Cink, Dobson, L. Winger, and E. Brown should

be dismissed because they were never served with the complaint.  Defendants argue that Kim

White, Brad Cink, Dobson, Lisa Winger, Dan Maloney, Besaw, and Van Yserloo should be

dismissed because there is no allegation or evidence that they were personally involved in any

constitutional violation.  (Defs.' Br. at 11.)  Defendants are correct.  Therefore, I recommend that

the Court grant Defendants' motion for summary judgment and dismiss the claims against Kim

White, Dan Maloney, Besaw, and VanYserloo be dismissed for lack of personal involvement.

2.      Defendants Alleged to Have "Tacitly Approved" Conduct by Other
        Defendants

Plaintiff alleges that Defendants Kathleen H. Sawyer, Harrell Watts, M.E. Ray, Miller,

and Marini "tacitly approved" of allegedly unconstitutional acts by other employees and that this

was done "in furtherance of the conspiracy."  (Compl ¶¶ 38, 47, 53, 76, 104, 117, 148, 149, 161,

203, 235-36, 239-41, 246-47, 255-60, 278, 280, 289, 291, 313, 321-22, 326.)  Defendants move

for summary judgment dismissing these claims for lack of personal involvement.  (Defs.' Br. at

12-14.)

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[63]  In order to

prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show

some tangible connection between the alleged unlawful conduct and the defendant.[64]  If the

defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison

chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or

her personal involvement in that unlawful conduct.[65]  In other words, supervisory officials may

not be held liable merely because they held a position of authority.[66]  Rather, supervisory

---

[63]      *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*,
434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[64]      *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[65]      *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d
431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.
1985).

[66]      *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[67]

Here, Plaintiff's complaint does not include any facts plausibly suggesting that Defendants Sawyer, Watts, Ray, Miller, and Marini  were personally involved in any constitutional violation due to their "tacit approval."  Therefore, I recommend that Defendants' motion be granted and any claims against these Defendants for "tacitly approving" actions by other Defendants be dismissed.

### 3.   Refusal to Overturn Disciplinary Convictions

Plaintiff alleges that Defendant Harley G. Lappin, the Director of the Bureau of Prisons, affirmed several of his disciplinary convictions.  (Compl. ¶¶ 256, 258, 260, 278, 280.) Defendants argue that Defendant Lappin was not personally involved because the Director of the Bureau of Prisons plays no role in reviewing disciplinary convictions.  (Defs.' Br. at 14.) Defendants are correct.  The final level of appeal of disciplinary convictions in the federal prison system is the General Counsel.  28 C.F.R. § 542.15(a).  Defendant Lappin, as Director of the Bureau of Prisons, thus would not become involved in appeals process under normal conditions. Plaintiff has not alleged or presented any evidence that any unusual conditions existed that

---

[67]   *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

involved Defendant Lappin in his case in some manner other than through the normal appeals process.  Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

Plaintiff alleges that Defendant Harrell Watts and Defendant M.E. Ray affirmed several of Plaintiff's disciplinary convictions.  (Compl. ¶¶ 255-56, 257-58, 259-60, 277-78, 280.)  This allegation is insufficient to establish that Defendants Watts or Ray were personally involved in any alleged violation of Plaintiff's constitutional rights.  *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002).  Therefore, I recommend that these claims be dismissed.

4. <u>Failure to Respond to Letters and Grievances</u>

Plaintiff alleges that Defendant Lappin did not respond to a letter that Plaintiff wrote him about alleged misconduct at Ray Brook.  (Compl. ¶ 282.)  Defendants argue that this claim should be dismissed because a prison official's receipt of a letter is insufficient to render the prison official personally involved in any alleged constitutional violation.  (Defs.' Br. at 14-16.)  Defendants are correct.  "[A]n allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."  *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (quoting *Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 U.S. Dist. LEXIS 5144, 1995 WL 232736, at * 4 (S.D.N.Y. Apr. 19, 1995)).  Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim against Defendant Lappin.

**D.    Conspiracy**

At the close of the section of the complaint listing the 71 defendants' names, Plaintiff:

avers that each of the actions described in this complaint was and

31

> continues to be taken by the Federal Bureau of Prisons employees in
> furtherance of the conspiracy.  That if the defendants would not have
> possessed and deployed their invidious and racial discriminatory and
> retaliatory misconduct and arbitrary procedures towards them, the
> defendants would not have performed such on-going acts alleged in
> this complaint, absent an invidious and racial discriminatory and
> retaliatory purpose in furtherance of the conspiracy.

(Compl. ¶ 35.)  Thereafter, many of the paragraphs of the complaint end with the phrase "in

furtherance of the conspiracy."  (Compl. ¶¶ 38, 47, 62, 65, 67, 70, 74, 76, 82, 86, 87, 88, 98, 104,

105, 106, 107, 109, 110, 112, 113, 114, 116, 117, 119, 121, 122, 123, 128, 135, 137, 138, 140,

145, 148, 151, 152, 154, 160, 161, 162, 169, , 170, 174, 175, 179, 180, 181, 182, 183, 190, 203,

204, 205, 218, 219, 220, 225, 229, 230, 235, 238, 239, 240, 241, 243, 244, 245, 246, 247, 252,

253, 254, 255, 256, , 257, 258, 259, , 260, 261, 267, 272, 274, 275, 276, 277, 278, 279, 280, 282,

287, 313, 314, 315, 318, 328, 330, 331, 332.)  Defendants argue that Plaintiff's conspiracy claims

should be dismissed as conclusory.  (Defs.' Br. at 21-22.)  Defendants are correct.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or

more state actors or between a state actor and a private entity; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Here, the complaint does not plausibly suggest, and Plaintiff has not presented any

evidence showing, an agreement between any of the defendants to act in concert to inflict an

unconstitutional injury.  Rather, the 68-page complaint describes a series of disjointed episodes

involving actions by the 71 defendants and simply adds the words "in furtherance of the

conspiracy" to some of the allegations.  Therefore, I recommend that Plaintiff's conspiracy

claims be dismissed.

### E.      Retaliation

Plaintiff alleges that Defendants had a "retaliatory purpose" for each and every act described in the complaint.  (Compl. ¶ 35.)  Defendants argue that Plaintiff's retaliation claims should be dismissed because they are "wholly conclusory" and because Plaintiff has "not provide[d] any evidence to support the broad allegations".  (Defs.' Br. at 22.)

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.   Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Plaintiff's blanket assertion that each and every act he describes in the complaint was retaliatory perfectly illustrates the concerns expressed by the Second Circuit in *Dawes*.  I therefore decline to address each and every paragraph in the 339-paragraph complaint as a

potential retaliation claim.  Rather, I will limit my analysis to those few paragraphs that more specifically implicate a possible retaliation claim.  Specifically, I will address Plaintiff's claims that Defendants Salamy, Snyder, Synder, Evans, Davis, Hayes, Fizpatrick, Darrah, and Straight filed incident reports against him.

On September 4, 2002, Officer Fitzpatrick issued a false misbehavior report, which resulted in Plaintiff being confined to the SHU. (Compl. ¶ 54.)

On November 19, 2002, Defendant Hayes filed a false incident report in order to have Plaintiff confined to the SHU.  Hayes told Plaintiff that "We have been watching you, we're not like Petillier." (Compl. ¶ 114.)

On January 18, 2003, Darrah filed an incident report alleging that Plaintiff was in an unauthorized area. (Compl. ¶ 152.)

On March 24, 2003, Plaintiff was working in the law library.  An inmate named Jason Physic approached him and told him that Defendant Straight had been harassing Physic and had issued a direct order to Physic prohibiting him from using the copy machine for any purpose other than photocopying legal materials.  (Compl. at ¶ 163.)  Plaintiff approached Defendant Straight and expressed concern.  (Compl.¶ 164.)  Defendant Straight "became very hostile" and told Plaintiff that the situation was between himself and Physic.  (Compl. ¶ 165.)  Plaintiff told Defendant Straight that he was representing Physic.  (Compl. ¶ 166.)  Plaintiff told Physic to file a complaint if he felt that Defendant Straight was harassing him.  Plaintiff accompanied Physic to his classroom, where he continued to question Physic about his previous encounters with Defendant Straight.  (Compl. ¶ 167.)  Defendant Straight stormed into the classroom, told Plaintiff he was out of bounds, requested Plaintiff's identification card and ordered Plaintiff to

leave the classroom immediately.  Plaintiff complied.  (Compl.¶ 168.)  On March 25, 2003,

Defendant Straight issued an incident report against Plaintiff.  (Compl.  ¶ 169.)

On April 16, 2003, Defendants Snyder, Salamy, Evans, and Davis filed a false

misbehavior report against Plaintiff.  (Compl. ¶ 183.)

On April 23, 2003, Defendant Synder filed an incident report against Plaintiff.  (Compl. ¶

220.)  Defendant Synder told Plaintiff that he intended to file incident reports against Plaintiff "if

he even thinks that he ha[s] violated a policy."  (Compl. ¶ 221.)

To prevail on a retaliation claim, a plaintiff must prove by the preponderance of the

evidence that: (1) he was engaged in constitutionally protected speech or conduct; (2) the

defendants took "adverse action" against the plaintiff; and (3) there was a causal connection

between the protected speech or conduct and the adverse action.  *Mount Healthy City Sch. Dist.*

*Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*,

239 F.3d 489, 492 (2d. Cir. 2001)).

Here, with the exception of the incident involving Defendant Straight, the complaint does

not allege facts plausibly suggesting that Plaintiff was engaged in any constitutionally protected

activity or that there was a causal connection between any constitutionally protected activity and

the issuance of the incident reports.  Although the complaint, taken as a whole, raises the faintest

of inferences that Defendants did not like Plaintiff because he frequently filed grievances,

Plaintiff does not explicitly draw a connection between that fact and the incident reports filed by

Defendants Salamy, Snyder, Synder, Evans, Davis, Hayes, Fiztpatrick, and Darrah.  Therefore, I

recommend that the Court grant Defendants' motion and dismiss those claims.

The allegations regarding Defendant Straight are more complicated.  If encouraging

another inmate to file a grievance is constitutionally protected activity, then the complaint here

plausibly suggests that Defendant Straight took adverse action against Plaintiff for exercising that

right.  The Second Circuit has "not yet addressed the question whether barring inmates from

encouraging other inmates to file grievances implicates speech and free association rights under

the First Amendment."  *Gayle v. Gonyea*, 313 F.3d 677, 680 n.3 (2d Cir. 2002).  Because the

Second Circuit has not yet addressed this question, Defendant Straight is entitled to qualified

immunity.

A qualified immunity inquiry in a prisoner civil rights case generally involves two issues:

(1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional

violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004)

(citations omitted), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations

omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with
> 'reasonable specificity'; (2) whether the decisional
> law of the Supreme Court and the applicable circuit
> court support the existence of the right in question;
> and (3) whether under preexisting law a reasonable
> defendant official would have understood that his or
> her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S.

962 (1992).[68]  Here, because the decisional law of the Second Circuit does not support the

existence of a First Amendment right to encourage other inmates to file grievances, it would not

be clear to a reasonable officer that preventing an inmate from doing so would be unlawful.

Therefore, I recommend that the Court dismiss the retaliation claim against Defendant Straight

on the ground of qualified immunity.

### F.    Racial Discrimination

The complaint alleges that each of the actions in the complaint was "racial discriminatory

... misconduct."  (Compl. ¶ 35.)  In addition to this blanket statement, the complaint alleges six

specific incidents of racial discrimination: (1) Defendants Chester and Nally[69] "deceitfully

concoct[ed] his medical disabilities into medical extremities to appear justified in prohibiting the

Plaintiff from working inside the food service department (Compl. ¶ 43); (2) Defendant

Fitzpatrick "invidiously discriminated and retaliated against the Plaintiff by maliciously and

sardonically concocting a false and misleading incident report against the Plaintiff to confine him

to the SHU" (Compl. ¶ 54); (3) Defendants Sullivan and Phillips[70] refused to dismiss an incident

report filed against Plaintiff "despite their knowledge of the reporting staff member's invidious

---

[68]  *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[69]     As discussed above, Defendants Chester and Nally were never served and I recommend that the claims against them be dismissed.

[70]     As discussed above, Defendants Sullivan and Phillips were never served and I recommend that the claims against them be dismissed.

and racial discriminatory misconduct" (Compl. ¶ 67); (4) Defendant Halladay[71] allowed a white

inmate to pick the cell of his choice but did not allow Plaintiff the cell of his choice (Compl. ¶

90); (5) Defendant Sullivan provided a false response to a grievance "to condone Counselor

Halladay's invidious and racial discriminatory and retaliatory misconduct" (Compl. ¶ 218); and

(6) Defendants Boutin and Ryan failed to release Plaintiff from disciplinary segregation when his

disciplinary sentence expired pursuant to "a discriminatory and retaliatory practice of releasing

favored inmates ... from the SHU while unfavored inmates served their entire disciplinary

segregation sanction."  (Compl. ¶ 266.)

Defendants move to dismiss these claims.  (Defs.' Br. at 22-23.) I will address only the

second and the sixth incidents because the other incidents involve Defendants who were never

served and should thus be dismissed.

The Equal Protection Clause requires the government to treat all similarly situated people

alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1989).  Specifically, the

Equal Protection Clause "bars the government from selective adverse treatment of individuals

compared with other similarly situated individuals if 'such selective treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person.'"  *Bizzarro v. Miranda*,

394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d

Cir.1980)).  Conclusory allegations of disparate treatment or a plaintiff's personal belief of

discriminatory intent are insufficient to plead a valid equal protection claim.  *Nash v. McGinnis*,

---

[71]    As discussed above, Defendant Halladay was never served and I recommend that the claims against him be dismissed.

585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008).

Here, Plaintiff's racial discrimination claims against Defendants Fitzpatrick, Boutin, and Ryan contain only conclusory allegations of disparate treatment. Although Plaintiff claims that Defendants Boutin and Ryan treated "favored" inmates differently than they treated him, he does not allege that these "favored" inmates were of a different race than Plaintiff. Therefore, I recommend that the Court grant Defendants' motion and dismiss the racial discrimination claims against Defendants Fitzpatrick, Boutin, and Ryan.

### G. False Incident Reports

The complaint contains several claims that Defendants issued misbehavior reports against Plaintiff. Specifically:

On September 4, 2002, Officer Fitzpatrick issued a false misbehavior report, which resulted in Plaintiff being confined to the SHU. Plaintiff asserts that, by doing so, Fitzpatrick "invidiously discriminated and retaliated" against him. (Compl. ¶ 54.)

On November 19, 2002, Defendant Hayes filed a false incident report in order to have Plaintiff confined to the SHU. Hayes told Plaintiff that "We have been watching you, we're not like Petillier." Hayes then escorted Plaintiff to the Lieutenants' Office, from which he was escorted to the SHU. (Compl.¶ 114.)

On January 18, 2003, Darrah filed an incident report alleging that Plaintiff was in an unauthorized area. Darrah did so "out of spite in furtherance of the conspiracy." (Compl. ¶ 152.)

On March 24, 2003, Plaintiff was working in the law library. An inmate named Jason Physic approached him and told him that Defendant Straight had been harassing Physic and had issued a direct order to Physic prohibiting him from using the copy machine for any purpose

other than photocopying legal materials.  (Compl. at ¶ 163.)  Plaintiff approached Defendant

Straight and expressed concern.  (Compl.¶ 164.)  Defendant Straight "became very hostile" and

told Plaintiff that the situation was between himself and Physic.  (Compl.¶ 165.)  Plaintiff told

Defendant Straight that he was representing Physic.  (Compl. ¶ 166.)  Plaintiff told Physic to file

a complaint if he felt that Defendant Straight was harassing him.  Plaintiff accompanied Physic to

his classroom, where he continued to question Physic about his previous encounters with

Defendant Straight.  (Compl. ¶ 167.)  Defendant Straight stormed into the classroom, told

Plaintiff he was out of bounds, requested Plaintiff's identification card and ordered Plaintiff to

leave the classroom immediately.  Plaintiff complied.  (Compl.¶ 168.)  On March 25, 2003,

Defendant Straight issued an incident report against Plaintiff.  (Compl.  ¶ 169.)

On April 16, 2003, Defendants Snyder, Salamy, Evans, and Davis filed a false

misbehavior report against Plaintiff.  (Compl. ¶ 183.)

On April 23, 2003, Defendant Synder filed an incident report against Plaintiff.  (Compl. ¶

220.)  Defendant Synder told Plaintiff that he intended to file incident reports against Plaintiff "if

he even thinks that he ha[s] violated a policy."  (Compl. ¶ 221.)

On May 15, 2003, Defendant Halladay filed a false and misleading incident report "in

order for the staff members to seize [an] incident report from the Plaintiff's personal property."

(Compl. ¶ 236.)

On May 15, 2003, Officer Poirier filed a "deceitful and misleading" incident report

against Plaintiff.  (Compl. ¶ 241.)  On May 17, 2003, Lt. Davis "issued ... the invidious and racial

discriminatory and retaliatory May 5, 2003, incident report filed by Officer Poirier, despite his

knowledge of Officer Poirier's misconduct."  (Compl. ¶ 243.)

On May 28, 2003, Defendant Shipman "filed an incident report for 'Refusing to obey an order of any staff member' against the Plaintiff ... despite his knowledge of the medical staff prescribing the Plaintiff pain medication for his headaches and anxiety caused by the constant bright lights remaining on inside of the Plaintiff's cell."  (Compl. ¶ 248.)

On August 23, 2003, Officer E. Brown "maliciously and sardonically filed a misbehavior report against the Plaintiff out of spite and in retaliation in furtherance of the conspiracy." (Compl. ¶ 328.)

Defendants argue that each of these claims should be dismissed because Plaintiff has not alleged that he was deprived of liberty or property as a result of the misbehavior reports.  (Defs.' Br. at 23-24.)  I will address Defendants' arguments regarding the reports filed by Defendants Fitzpatrick, Hayes, Darrah, Synder, Snyder, Salamy, Evans, Davis, and Straight.  I will not address the claims regarding Defendants Halladay, Poirer, Shipman, and E. Brown because, as discussed above, those Defendants should be dismissed because they were not served.

A prisoner's claim that a correctional officer filed a false misbehavior report may implicate two separate constitutional provisions: (a) the Fourteenth Amendment right to procedural due process; or (b) the right not to be retaliated against for exercising First Amendment rights such as the right of access to the courts or the right to petition the government for redress of grievances.  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Franco v. Kelly*, 854 F.2d 584 (1988); *Jones v. Coughlin*, 45 F.3d 677 (1995).  To the extent that Plaintiff's claims regarding the misbehavior reports assert that Defendants retaliated against him, they are discussed above in Part II(E).

In order to state a claim for violation of his procedural due process rights, a plaintiff must

allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). Here, the complaint does not allege that Plaintiff was deprived of any liberty interest as a result of the reports filed by Defendant Darrah (Compl. ¶ 152), Straight (Compl. ¶¶ 163-68), Snyder, Salamy, Evans, Davis (Compl. ¶ 183), or Synder (Compl. ¶ 220-21). Therefore, Plaintiff has not stated a due process claim as to those Defendants and I recommend that the claims be dismissed.

Plaintiff alleges that he was confined to the SHU as a result of the reports filed by Defendants Fitzpatrick and Hayes. (Compl. ¶¶ 54-55, 114.) A federal inmate has a liberty interest in remaining free from a confinement or restraint where the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). The issue, then, is whether Plaintiff has alleged facts plausibly suggesting that his confinement in the SHU imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

In the Second Circuit, determining whether a disciplinary confinement in the SHU constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only

if "the conditions were more severe than the normal SHU conditions."[72]  *Palmer*, 364 F.3d at 65.

Here, Plaintiff was confined to the SHU for seven days as a result of Defendant Fitzpatrick's report and for two days as a result of Defendant Hayes' report.  (Defs.' Stmt. Material Facts Not in Dispute ¶¶ 20-27.)  He has not alleged that the SHU conditions he experienced during that time were more severe than normal SHU conditions.  Therefore, I recommend that the Court grant Defendants' motion and dismiss the due process claims against Defendants Fitzpatrick and Hayes.

### H.    Unit Disciplinary Committee Hearings

Plaintiff alleges that Defendant Lucas conducted a Unit Disciplinary Committee ("UDC") hearing on May 31, 2003, and "failed to expunge the incident report filed by Officer Shipman, despite ... knowledge that the Plaintiff was prescribed medication for his pain, and the fact that Officer Shipman maliciously and sardonically filed the incident report against Plaintiff." (Compl. ¶ 249.)  Defendants argue that this claim should be dismissed because Plaintiff "does not allege that the UDC imposed any punishment against him that deprived him of liberty or property[73]."  (Defs.' Br. at 25.)  Defendants are correct.

As discussed above, in order to state a due process claim, a plaintiff must show that he was deprived of a property or liberty interest.  Here, the UDC referred the charge against Plaintiff for a hearing by a Discipline Hearing Officer ("DHO").  The DHO sentenced Plaintiff to ten days

---

[72]    "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week.  *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

[73]    Defendants make the same argument about similar claims against Defendants Sullivan, MacNerland, and Phillips.  As discussed above, those Defendants were never served and thus should be dismissed.

in disciplinary segregation, suspended for 180 days.  (Defs.' Stmt. Material Facts Not in Dispute ¶¶ 48-51.)  Plaintiff has not alleged or shown that he ever served the disciplinary sentence or that, if he did, he experienced any atypical and significant hardships while doing so.  Therefore, I recommend that the Court grant Defendants' motion and dismiss the due process claim against Defendant Lucas.

## I.       Misbehavior Reports

Plaintiff's complaint includes many allegations that various Defendants refused to accept, failed to respond to, improperly processed, or destroyed grievances that he attempted to file. (See e.g. Compl. ¶¶ 49, 52, 83-84, 86-87, 93, 95, 99-100, 116, 119, 122, 130, 131, 133, 139, 140-41, 145, 160-61, 170, 175, 181, 184-85, 206-08, 238, 252, 262, 269, 270-71, 281, 283, 314(a)[74], 315(a), 316(a).)  Defendants argue that these claims should be dismissed because there is no constitutional right to the inmate grievance process.  (Defs.' Br. at 26.)  Defendants are correct.

> The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances.  See *Bill Johnson's Rest., Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).  However, inmate grievance programs ... are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim.  *Cancel v. Goord*, No. 00 Civ. 2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001).  If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim.  *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Cancel*, 2001 WL 303713, at *3; *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 390 (W.D.N.Y. 1998).

---

[74]     Plaintiff's complaint contains two sets of paragraphs numbered 314-18.  I will use an (a) to differentiate the second use of the numbers.

*Shell v. Brzezniak,* 365 F. Supp. 2d 362, 369 -370 (W.D.N.Y. 2005). Therefore, I recommend that the Court grant Defendants' motion and dismiss all claims that Defendants refused to accept, failed to respond to, or destroyed grievances.

J.     **Medical Care**

Plaintiff alleges that Defendants Mina, Marini, Liberty, Miller, Burdt, and Snyder violated his Eighth Amendment right to adequate medical care.

1.     Eighth Amendment Medical Care Standard

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To satisfy the subjective component, the defendant's behavior

45

must be "wanton."  Where a prisoner claims that a defendant provided inadequate medical care,

he must show that the defendant acted with "deliberate indifference."  *Estelle*, 429 U.S. at 105.

Medical mistreatment rises to the level of deliberate indifference only when it "involves

culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a

substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d 698, 703 (quoting *Farmer v.

Brennan*, 511 U.S. 825, 835 (1994)).  Thus, to establish deliberate indifference, an inmate must

prove that (1) a prison medical care provider was aware of facts from which the inference could

be drawn that the inmate had a serious medical need; and (2) the medical care provider actually

drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then

must establish that the provider consciously and intentionally disregarded or ignored that serious

medical need.  *Farmer*, 511 U.S. at 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An

"inadvertent failure to provide adequate medical care" does not constitute "deliberate

indifference."  *Estelle*, 429 U.S. at 105-06.  Moreover, a complaint that a physician has been

negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the

Eighth Amendment."  *Id.*  Stated another way, "medical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Id.*; *Smith v. Carpenter*, 316

F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing

medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical

care will rise to the level of a constitutional violation.")  However, malpractice that amounts to

culpable recklessness constitutes deliberate indifference.  Accordingly, "a physician may be

deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment

plan." *Chance*, 143 F.3d at 703.

46

2.    <u>Vagueness</u>

Defendants argue that the following allegations regarding the medical care Plaintiff

received should be dismissed as vague (Defs.' Br. at 27-28):

On August 8, 2002, Defendant Mina[75], an orthopedist, examined and evaluated Plaintiff's

feet after Plaintiff complained of pain in his arches.  Plaintiff alleges that Defendants Mina and

Marini "deceitfully misdiagnos[ed] the condition of Plaintiff's feet to appear justified in denying

... Plaintiff adequate medical treatment and care, despite their knowledge of ... Plaintiff's

condition and the appropriate medical treatment and care."  (Compl. ¶ 47.)

On August 26, 2002, Defendant Liberty misdiagnosed Plaintiff's foot condition and failed

to prescribe Plaintiff pain medication "despite the Plaintiff's pleading for pain medication."

(Compl. ¶ 53.)

On May 16, 2003, Defendant Miller "willfully failed to provide the Plaintiff his

prescribed medication seized by ... staff members on May 5, 2003."  (Compl. ¶ 242.)

On June 20, 2003, Defendant Burdt ordered Plaintiff to remove the paper covering the

constant lighting in his cell.  Plaintiff claims that by doing so, Defendant Burdt exhibited

deliberate indifference toward Plaintiff's serious medical needs.  (Compl. ¶ 264.)  As discussed

above, this claim should be dismissed for failure to exhaust administrative remedies.

Plaintiff alleges that on June 20, 2003, he informed Defendant Snyder of his headaches

and requested to either see a medical staff member or have his prescription refilled.  Snyder said

he would immediately contact the medical staff.  "The medical staff willfully failed to diagnose

---

[75]    Defendant Mina was never served.  Accordingly, as discussed above, I
recommend that the claims against Defendant Mina be dismissed.

the Plaintiff or provide him with his prescribed medication."  (Compl. ¶ 265.)

On August 16, 2003, Plaintiff attended sick call regarding acute pain in his feet.  He

asked Mrs. Cloud, who is not a named defendant, for "a medical covalesce, to relieve him of his

pain due to the extensive walking required on his job.  Mrs. Cloud simply disregarded the

Plaintiff's acute pain and medical concerns exhibiting deliberate indifference toward the

Plaintiff's serious medical need."  (Compl. ¶ 326.)

Plaintiff's allegations are not vague.  They describe with some specificity, including dates

and names, the violations he alleges occurred.  He has certainly provided sufficient information

for Defendants to answer or move to dismiss the claims.  Therefore, I recommend that

Defendants' motion be denied on the ground of vagueness.

> 3.     Claims Regarding the Care of Plaintiff's Feet

The complaint contains several allegations about the treatment of Plaintiff's feet.

Specifically, Plaintiff alleges that[76]:

Before he arrived at Ray Brook on July 25, 2002, "medical physicians and an orthopedic

specialist" had recommended soft-sole shoes for Plaintiff.  Defendants Marini and Miller

"conspired to willfully fail in providing" Plaintiff with the shoes "in furtherance of the

conspiracy."  Plaintiff did not receive the shoes until November 5, 2002, when Warden Chester

issued a pair to him.  (Compl. ¶ 105.)  On November 7, 2002, Plaintiff informed Warden Chester

that the soft-sole shoes he had been issued lacked arch support and hurt his feet.  Plaintiff

---

[76]     Defendants' argument regarding these claims also discussed claims against
Defendants Mina, Chester, Shull.  These individuals were never served and, as discussed above, I
recommend that all claims against them be dismissed.  Defendants' argument also discusses
"claims" against people named Cloud and Goodin, who were not named as defendants and were
never served.  I decline to address these arguments.

returned the shoes and attempted to obtain another pair.  Defendants Marini and Miller refused to provide a different pair.  (Compl. ¶ 111.)

On August 26, 2002, Defendant Liberty misdiagnosed Plaintiff's foot condition and failed to prescribe Plaintiff pain medication "despite the Plaintiff's pleading for pain medication." (Compl. ¶ 53.)

On January 13, 2003, Plaintiff was examined at sick call by non-defendant Cloud.  Cloud prescribed "a medical creme and the oral medication recommend[ed] by the dermatologist at F.C.I. Three Rivers" for treatment of Plaintiff's athlete's foot.  (Compl. ¶ 146.)  Cloud told Plaintiff that he would receive the medication "in a few days."  (Compl. ¶ 147.)  On January 15, 2003, Cloud told Plaintiff that Dr. Marini had overruled her recommendation and that Plaintiff would instead receive "aluminum acetate domeboro" tablets. (Compl. ¶ 148.)

On May 13, 2003, Defendant Liberty mis-diagnosed Plaintiff's athlete's foot problems and an infection between Plaintiff's toes and refused to prescribe Plaintiff pain medication. (Compl.¶ 235).  As discussed above, this claim should be dismissed for failure to exhaust.

On June 23, 2003, Defendant Liberty refused to prescribe "ketoconazole and acetate domeboro" for Plaintiff's athlete's foot condition.  (Compl. ¶ 268.)

Defendants argue that the claims should be dismissed.  (Defs.' Br. at 28-29.)  Defendants are correct.  Plaintiff's allegations do not satisfy the objective prong of an Eighth Amendment claim because he has not alleged that he suffers from any serious medical condition.  Plaintiff has not satisfied the subjective prong because, at worst, Plaintiff's claims establish medical malpractice. Therefore, I recommend that these claims be dismissed.

4.      Miscellaneous Medical Claims

a.      *Order to Shovel Snow*

The complaint alleges that on January 23, 2003, Defendant Stone ordered Plaintiff to

shovel snow, despite the fact that Plaintiff was medically restricted from lifting over 15 pounds.

(Compl. ¶ 155.)  When Defendant Stone asked Plaintiff if he had his medical restriction permit

with him, Plaintiff replied that he did not but that the information was available on the sentry

computer.  (Compl. ¶ 156.)  Defendant Stone told Plaintiff that he did not have any obligation to

check the sentry computer because Plaintiff was required to carry his medical permit with him.

Defendant Stone said that if Plaintiff did not start shoveling, he would be sent to the SHU.

(Compl. ¶ 157.)  Plaintiff complied with Defendant Stone's order and began shoveling.  (Compl.

¶ 158.)  Defendant Stone locked Plaintiff in "an isolated area on the yard in the bitter cold where

the Plaintiff was forced to remain" for approximately one hour.  *Id.*  Plaintiff does not allege that

he was injured as a result of shoveling snow.

Defendants argue that this claim should be dismissed because Plaintiff "has failed to

demonstrate that he had a medical need that was sufficiently serious or that Defendant Stone

acted with a culpable state of mind ... Further, he presents no evidence that if he did have a

medical restriction, that this act would violate it or that he suffered any type of harm from this

conduct."  (Defs.' Br. at 29-30.)

Non-medical personnel may exhibit deliberate indifference by deliberately defying the

express instructions of a prisoner's doctor's or deliberately interfering with medically prescribed

treatment solely for the purpose of causing the inmate unnecessary pain.  *Gill v. Mooney*, 824

F.2d 192, 196 (2d Cir. 1987).  Where non-medical defendants "deliberately interfere" with

50

"medically prescribed treatment solely for the purpose of causing ... unnecessary pain, they may be subject to liability despite the likelihood that [the prisoner] suffered no permanent injuries." *Id*.

Here, Defendants admit that Plaintiff was medically restricted from lifting over 15 pounds. (Defs.' Stmt. Material Facts Not in Dispute ¶ 7.) Taking the allegations of the verified complaint as true, Defendant Stone was aware of that fact yet ordered Plaintiff to shovel snow and threatened him with punishment if he did not do so. The allegations of the complaint are sufficient to state a claim that Defendant Stone deliberately interfered with the medical restriction for the purpose of causing Plaintiff unnecessary pain. Therefore, I recommend that the Court deny Defendants' motion and direct them to answer this claim.

b.     *Confiscation of Medical Bowl*

The complaint alleges that on July 31, 2003, Defendant Wilcox "confiscated the Plaintiff's medical bowl issued to him by the medical staff for his serious medical needs." (Compl. ¶ 317(a).) Defendants argue that this claim should be dismissed because "Plaintiff does not demonstrate that Defendant[] Wilcox ... acted with culpable mind, meaning that [he] knew the bowl was necessary for a medical condition. He has also failed to demonstrate how the medical bowl was related to a sufficiently serious medical condition." (Defs.' Br. at 30.) Defendants are correct. The facts in the complaint do not plausibly suggest that Defendant Wilcox was aware of facts from which he could have inferred that the bowl was part of Plaintiff's medically prescribed treatment. Therefore, I recommend that the Court dismiss this claim.

c.      *Failure to Assign Lower Bunk*

Plaintiff alleges that on September 4, 2002, Defendants Hays and Holts escorted him to

the SHU.  (Compl. ¶ 56.)  When he arrived at his SHU cell, he saw that his cell-mate was

sleeping in the bottom bunk.  Plaintiff informed Hays and Holts that he had a medical permit

pending restricting him from being assigned to an upper bunk bed.  (Compl. ¶ 57.)  Plaintiff also

noted that there was no pillow for him.  (Compl. ¶ 59.)  Officers Hays and Holts learned that

Plaintiff was, indeed, medically required to sleep in the lower bunk.  They instructed Plaintiff's

cell-mate, Walker, to move.  Walker remained silent and did not move.  (Compl. ¶ 59.)  Holts

ordered Walker to move, but Walker refused.  Officer Holts then told Plaintiff "Well, Eady, sleep

on the floor then."  (Compl. ¶ 60.)  Officer Hays informed Plaintiff that there were no more

pillows.  (Compl. ¶ 61.)

Defendants argue that this claim should be dismissed "for the reasons stated above."

(Defs.' Br. at 30.)  It is not entirely clear to what "reasons stated above" Defendants are referring.

I find that Plaintiff has pleaded sufficient facts to plausibly allege that Defendants Hays and Holts

deliberately interfered with medically prescribed treatment for the purpose of causing Plaintiff

unnecessary pain.  Therefore, I recommend that the Court deny Defendants' motion and direct

them to answer this claim.

d.      *Claim Against Defendant Miller re: Prescription*

Plaintiff alleges that on May 16, 2003, Defendant Miller "willfully failed to provide the

Plaintiff his prescribed medication seized by ... staff members on May 5, 2003."  (Compl. ¶ 242.)

As discussed above, Defendants move to dismiss this claim as vague.  As discussed above, I find

that the claim is not vague.  Defendants have not advanced any other arguments regarding this

claim.  Therefore, I recommend that Defendants be directed to answer this claim.

**K.    Conditions in the SHU and the 12-Man Dorm**

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement in both the SHU and the 12-man dormitory to which he was assigned.  Defendants argue that these claims should be dismissed.  (Defs. Br. at 31-33.)

1.    SHU

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement in the SHU.  He identifies unnamed SHU "staff members" as the instigators of these conditions. (Compl. ¶¶ 38, 76, 240, 289, 320, 321.)

Defendants argue that these claims should be dismissed because Plaintiff has not alleged facts plausibly suggesting the existence of either the objective or the subjective prong of an Eighth Amendment conditions of confinement claim.[77]  (Defs.' Br. at 31-33.)  More importantly, however, the complaint does not allege that any of the named Defendants were personally involved in any of the allegedly unconstitutional conditions of confinement.  Therefore, I recommend that these claims be dismissed.

2.    12-Man Dorm

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement in the 12-man dormitory to which he was assigned.  Specifically, Plaintiff alleges that dormitory had inadequate bed space, inadequate space for lockers, no windows, poor ventilation, only one toilet and face bowl, no clothing or book shelf, "constant eletic (sic) lighting," and exposure to

---

[77]    Defendants' arguments regarding SHU and dormitory conditions also address claims against Defendant Silva.  As discussed above, Defendant Silva was never served and should be dismissed.

extreme levels of environmental tobacco smoke ("ETS").  (Compl. ¶¶ 42, 239.)  He alleges that

Defendants Sawyer and Ray thus "willfully deprived the Plaintiff of an ordinary duty of care."

(Compl. ¶ 239.)   In addition, Plaintiff alleges that Defendant Baker smoked in the dormitory on

several occasions.  (Compl. ¶¶ 107, 110, 136.)

Defendants argue that these claims should be dismissed because Plaintiff has not alleged

facts plausibly suggesting the existence of either the objective or the subjective prong of an

Eighth Amendment conditions of confinement claim.[78]  (Defs.' Br. at 31-33.)  I will analyze

Plaintiff's claims about ETS separately from his claims regarding the other conditions.

a.      *Bed space, lockers, windows, ventilation, toilet, shelving, and lighting*

To prove the objective component of an Eighth Amendment conditions of confinement

claim, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the

minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834.  Therefore, "extreme

deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*,

503 U.S. 1, 9 (1992).  Defendants argue that "Plaintiff's allegations do not rise to anything more

than an inconvenience or unpleasantness and do not rise to the level of 'unquestioned and serious

deprivations of basic human needs' necessary to establish an Eighth Amendment violation."

(Defs.' Br. at 31, quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).)  Defendants are

correct.  Nothing in the complaint plausibly suggests that Plaintiff was subjected to any extreme

deprivations.

To satisfy the subjective component, the defendant's behavior must be "wanton."  What

---

[78]      Defendants' argument regarding dormitory conditions also addresses claims
against Defendants Sherrod, Sullivan, Nally, Chester, Johnson, Babcock, and Jerry Doe .  As
discussed above, these defendants were never served and should be dismissed.

is considered "wanton" must be determined with "due regard for differences in the kind of conduct against which an Eighth Amendment objection is raised." *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  Where a prisoner claims that a defendant provided inadequate conditions of confinement, he must show that the defendant acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

A prison official demonstrates deliberate indifference to inhumane conditions of confinement where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, none of the facts in the complaint plausibly suggest that any of the Defendants exhibited deliberate indifference.  Therefore, I recommend that these claims be dismissed.

> b.      *ETS*

Plaintiff alleges that he was exposed to "extreme levels" of ETS in the 12-man dormitory. (Compl. ¶ 239.)

Eighth Amendment jurisprudence on the subject of prison ETS claims distinguishes between claims of present harm from ETS exposure (such as where exposure to ETS creates or exacerbates a medical condition) and claims that ETS exposure will cause the prisoner harm in the future.  *See e.g. Davidson v. Coughlin*, 920 F. Supp. 305 (N.D.N.Y. 1996).

ETS claims of present harm are analyzed, like other Eighth Amendment medical claims, pursuant to the framework set out in *Estelle v. Gamble*, 429 U.S. 97 (1976).  This framework requires a plaintiff to establish an objective and a subjective prong.  In order to establish the objective prong, a plaintiff must show that ETS caused him to suffer serious adverse health

consequences or that ETS aggravated an existing medical condition. *Liggins v. Parker*, No. 9:04-CV-0966, 2007 U.S. Dist. LEXIS 98713, 2007 WL 2815630, at * 16 (N.D.N.Y. Sept. 25, 2007)(citing *Alvarado v. Litscher*, 267 F.3d 648 (7th Cir. 2001)[79]. Here, Plaintiff has not alleged that the ETS caused him to suffer serious adverse health consequences or that it exacerbated an existing medical condition. Therefore, I recommend that Plaintiff's claim of present harm from ETS be dismissed.

In order to succeed on an ETS claim alleging future harm, a plaintiff must establish both an objective and a subjective element. *Gill v. Smith*, 283 F. Supp. 2d 763, 766 (N.D.N.Y. 2003). To establish the objective element, the plaintiff must show that he was exposed to unreasonably high levels of ETS. *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Gill*, 283 F. Supp. 2d at 766. Determining whether a plaintiff was exposed to unreasonably high levels of ETS

> requires more than scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36. As this quote indicates, in contrast to a claim of present harm from ETS, the focus in a claim of future harm from ETS is *not* on whether the plaintiff has sought treatment or complained of ailments associated with exposure to ETS. *McPherson v. Coombe*, 29 F. Supp. 2d 141, 145-46 (W.D.N.Y. 1998). Rather, the objective element for a claim regarding future

---

[79]    The undersigned will provide a copy of this unpublished decision to Plaintiff in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

harm from ETS focuses on whether levels of ETS in the facility were so high that they violated contemporary standards of decency.

Here, other than the conclusory allegation that he was subjected to "extreme" levels of ETS, Plaintiff has not alleged any facts plausibly suggesting that the levels of ETS in the dormitory were so high that they violated contemporary standards of decency.  Therefore, I recommend that the Court dismiss Plaintiff's claim of future harm from ETS exposure.

**L.     Access to the Courts**

The complaint alleges that Defendants Fitzpatrick, Baker, Wilcox, Snyder, LaPoint, Miller, Root, Picerno, and Evans violated Plaintiff's First Amendment right of access to the courts by (1) refusing to provide Plaintiff with copies, records, stamps, pens, or envelopes; (2) confiscating his legal materials and stamps; (3) arranging his schedule so that he could not access the law library; (4) inspecting his legal materials before attorney visits; and (5) interfering with his mail.  (Compl. ¶¶ 82, 92, 171-74, 180, 202-04, 238, 244, 261, 296[80].)

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."[81]  This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to

---

[80]     The complaint also alleges that Defendants Chester, Sherrod, Sullivan, Halladay, Nally, Lovett, John Doe, and Riehle and non-defendant Cloud violated Plaintiff's right to access the courts.  As discussed above, those individuals were never served and should be dismissed.

[81]     *See* U.S. CONST. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

present claimed violations of fundamental constitutional rights."[82]  "However, this right is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.'"[83]  As a result, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.[84] It is worth noting that "[t]his actual injury requirement 'is not satisfied by just any type of frustrated legal claim,' because the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[85]  "'Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.'"[86]

Here, the complaint does not allege that Plaintiff suffered any actual injury as a result of Defendants' alleged actions.  Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's access to the courts claims.

---

[82]    *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004) [citations omitted].

[83]    *Collins v. Goord,* 438 F. Supp.2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

[84]    *Lewis*, 518 U.S. at 353; *Renelique v. Duncan*, 03-CV-1256, 2007 U.S. Dist. LEXIS 27105, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007) (Strom, J.); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).

[85]    *Collins*, 423 F. Supp.2d at 415-16 (quoting *Lewis*, 518 U.S. at 355).

[86]    *Id.*

### M.     Threats/Harassment

Plaintiff alleges that several Defendants made demeaning remarks to him.  Specifically,

he alleges that Defendant Boutin approached in "a threatening manner"as if he were about to

strike Plaintiff and then ordered him to leave the dining hall, despite the fact that Plaintiff had not

eaten.  (Compl. ¶ 135.)  He further alleges that Defendant Hamilton told him not to look at his

mouth while he was talking and interrupted Plaintiff when Plaintiff attempted to report this

comment to another officer.[87]  (Compl. ¶ 214-16.)  Defendants argue that Plaintiff has failed to

state a claim.  (Defs.' Br. at 39-40.)  Defendants are correct.

The civil rights statutes are "not designed to rectify harassment or verbal abuse.  Thus,

mere allegations of verbal abuse do not rise to the level of a constitutional violation."  *Gill v.*

*Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003).  Moreover, an allegation that a prisoner has

missed one meal does not raise a constitutional issue.  *Brewton v. Hollister*, 948 F. Supp. 244,

250-51 (W.D.N.Y. 1996).  Therefore, I recommend that the Court grant Defendants' motion and

dismiss these claims.

### N.     Security Classification

Plaintiff alleges that Defendants Lappin, Ray, Washburn, and Picerno[88] maliciously

increased his security level, resulting in a "disciplinary transfer."  (Compl. ¶ 330.)  Defendants

argue that this allegation does not state a constitutional claim because  prisoners have no liberty

interest in retaining or receiving any particular security level.  (Defs.' Br. at 41.)  Defendants are

---

[87]     Plaintiff also alleges that Defendants Smith and Halladay threatened him.  As discussed above, those Defendants were never served and should be dismissed.

[88]     Plaintiff also claims that Defendants Drew, Chester, and Sullivan were involved in this decision.  As discussed above, those Defendants were not served and should be dismissed.

correct.  The transfer of a prisoner to a higher security prison does not infringe or implicate a liberty interest within the meaning of the Due Process Clause.  *Meachum v. Fano*, 427 U.S. 215 (1976).  Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

### O.      Commissary Privileges

Plaintiff alleges that Defendant Boutin[89] instituted a policy that limited SHU inmates' ability to purchase items from the commissary.  (Compl. ¶ 263.)  Defendants argue that this claim should be dismissed because inmates have no liberty interest in commissary privileges.  (Defs.' Br. at 42.)  Defendants are correct.  *Vega v. Artus*, 610 F. Supp. 2d 185, 200 (N.D.N.Y. 2009). Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

### P.      Work Assignment/Work Pay

Plaintiff alleges that Defendants Evans and Synder terminated Plaintiff's work schedule and job assignment and that Defendant Synder underpaid Plaintiff for one month of work. (Compl. ¶¶ 180, 230.)  Defendants argue that Plaintiff has not stated a claim because prisoners do not have a protected property interest in their job assignment or pay.  (Defs.' Br. at 42-43.) Defendants are correct.

"[A ] federal prisoner has no protected property interest in a UNICOR job assignment." *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009).  (UNICOR is the trade name for Federal Prison Industries, Inc., a government corporation that provides work and training opportunities for federal inmates.  *United States v. Thompson*, 227 F.3d 43, 45 n. 4 (2d Cir. 2000).)  Therefore, I recommend that the Court grant Defendants' motion and dismiss the claim against Defendants

---

[89]      Plaintiff also claims that Defendants Drew, Chester, and Johnson were involved in creating this policy.  As discussed above, those Defendants were not served and should be dismissed.

Evans and Synder regarding Plaintiff's job assignment.

Plaintiff would only have a property interest in his full pay if such an interest had been created by explicit, mandatory language in a prison statute or regulation. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989). As Defendants note, FPI is authorized, *but not required*, to pay the inmates it employs. 18 U.S.C. § 4126(c)(4). Thus, Plaintiff did not have a property interest in his pay. Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

**Q.    Claim Regarding the Use of Restraints[90]**

Plaintiff alleges that during his SHU confinement from May 15, 2003, to July 22, 2003, Defendants Sawyer, Lappin, Watts, Ray, Boutin, and Niles[91] kept Plaintiff "in hand-restraints while placing him inside of the recreation cages with other unknown inmates who were unrestrained by any hand or leg restraints." Plaintiff alleges that by doing so, Defendants exhibited "deliberate indifference toward the Plaintiff's present and future safety and well-being." (Compl. ¶ 291.) Defendants argue that Plaintiff has not stated a claim that they were deliberately indifferent. (Defs.' Br. at 43-44.) Defendants are correct.

A prison official demonstrates deliberate indifference where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which

---

[90]    In addition to the use-of-restraints claim discussed in this Report-Recommendation, Defendants' brief also discusses Plaintiff's claim regarding Defendant Halladay's use of restraints. (Defs.' Br. at 44-45.) As discussed above, Defendant Halladay was never served and should be dismissed. Therefore, I decline to address the excessive force claim against him on the merits.

[91]    Plaintiff also alleges that Defendants Nally, Drew, Chester, Johnson, Jerry Doe, Silva, and Williams were involved. As discussed above, these Defendants were never served and should be dismissed.

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  The complaint does not contain any facts plausibly suggesting that Defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed by "restraining [Plaintiff] in hand-restraints while placing him inside of the recreation cages with other unknown inmates who were unrestrained".  I note, in particular, that Plaintiff does not allege that Defendants forced him to *remain* restrained once he was in the recreation cage.  Rather, he alleges that Defendants restrained him "while placing" him in the cage.  It is not plausible that Plaintiff was at any risk of harm from the other, unrestrained, inmates while Defendants were still in the process of placing him in the recreation cage.  Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

> **R.     Administrative Detention**

Defendants' brief contains a section titled "Time spent in administrative detention does not violate a protected liberty interest." (Defs.' Br. at 45-48.)  Defendants characterize the following claims as involving "[t]ime spent in administrative detention":

Plaintiff alleges that during his time in the SHU from September 4, 2002, to September 10, 2002, Defendant Silva spitefully failed to provide him with an "Administrative Detention Order Lock Up Order" apprising him of the reason for his SHU confinement.  (Compl. ¶ 78.)  As discussed above, Defendant Silva was not served and I recommend that all claims against him be dismissed.

Plaintiff alleges that on September 10, 2002, Defendants Silva and Shene forged a lock-up order to justify Plaintiff's SHU detention.  (Compl. ¶ 79.)  Plaintiff does not allege that he suffered any atypical or significant hardships.  Plaintiff's six-day term in the SHU does not

implicate any liberty interest and I therefore recommend that this claim be dismissed.  *Palmer*, 364 F.3d at 65.

In Paragraphs 222-25 of the complaint, Plaintiff alleges that on May 5, 2003, Officer Synder told him that he could no longer use the office to take a break from prolonged standing (Compl. ¶ 223.)  Minutes later, the plaintiff was asked by a staff member to help carry heavy construction equipment. (Compl. ¶ 224.)  Defendant Hamilton told Defendant Hart[92] to "go ahead and write his ass up, I am sick of him." (Compl. ¶ 225.) Plaintiff was then apprehended and confined to the SHU  (Compl. ¶ 225).  As discussed above, Plaintiff failed to exhaust this claim and I recommend that it be dismissed.

On June 24, 2003, Plaintiff received a copy of his SRO review for his SHU confinement period that lasted from May, 15 2003 until June 24, 2003. (Compl. ¶ 284.) Plaintiff alleges he did not receive the requested SRO forms while in detention and also that Defendant Boutin forged the latter document to appear as if Plaintiff had received those documents. (Compl. ¶ 284.) Plaintiff's 41-day SHU detention does not implicate a liberty interest because Plaintiff does not allege that he was subjected to any atypical conditions.   *Palmer*, 364 F.3d at 65.  Thus, he was not entitled to due process even if SRO forms are required under the Due Process Clause when a liberty interest is implicated.  Therefore, I recommend that this claim be dismissed.

Plaintiff alleges that he received a 20-day disciplinary segregation sentence on June 2, 2003.  (Compl. ¶ 266.)  He alleges that Defendants Ryan and Boutin did not release him from

---

[92]      Defendant Hart was never served with the complaint.  Accordingly, as discussed above, I recommend that all claims against him be dismissed.

disciplinary segregation when his disciplinary sentence expired.  (Compl. ¶ 266[93].)  Plaintiff

admits elsewhere in the complaint that he received a 22-day sentence,  rather than a 20-day

sentence. (Compl. ¶ 250.)  Prison records indicate that Plaintiff's disciplinary sentence did not

expire until June 25, 2003, and that he was released from the SHU on that date.  (Defs.' Stmt. of

Material Facts Not in Dispute ¶¶ 45-46.)  In any event, no liberty interest is implicated by a 22-

day SHU sentence where, as here, no atypical conditions are alleged.  *Palmer*, 364 F.3d at 65.

Therefore, I recommend that this claim be dismissed.

Plaintiff alleges that Defendants Drew and Niles refused to provide Plaintiff with a copy

of his Administrative Detention Order or a formal SRO review during the SHU confinement that

lasted from July 31, 2003, to August 13, 2003.  (Compl. ¶¶ 318(a)-319.)  Plaintiff's 14-day SHU

detention does not implicate a liberty interest because Plaintiff does not allege that he was

subjected to any atypical conditions.  *Palmer*, 364 F.3d at 65.  Thus, he was not entitled to due

process even if SRO forms are required under the Due Process Clause where a liberty interest is

implicated.  Therefore, I recommend that this claim be dismissed.

### S.   Disciplinary Hearings

The complaint contains several allegations about prison disciplinary hearings.

Specifically, Plaintiff alleges that on April 22, 2003, Defendant Pickreign served as the

disciplinary hearing officer for the hearing regarding incident reports filed by Officer Snyder and

Counselor Halladay.  (Compl. ¶ 219.)  Defendant Pickreign found Plaintiff guilty of the charges.

*Id.*.  Prison records show that Plaintiff was sentenced to seven days of disciplinary segregation,

suspended for 180 days, and 30 days' loss of commissary.  (Defs.' Stmt. Material Facts Not in

---

[93]       Defendants mistakenly list this citation as Paragraph 260.  (Defs.' Br. at 46.)

Dispute ¶ 30.)

Plaintiff further alleges that Defendant Ryan served as the disciplinary hearing officer for

the hearing regarding incident reports filed by Defendant Halladay.  (Compl. ¶ 254.)  Defendant

Ryan did not expunge the misbehavior report filed by Counselor Halladay.  *Id.*   Plaintiff was

sentenced to 22 days of disciplinary segregation.  (Compl. ¶ 250.)

Plaintiff alleges that Defendant Ryan, who served as the disciplinary hearing officer for

the hearing regarding incident reports filed by Defendants Burdt and Shipman, "conspired to

maliciously and sardonically deprive the Plaintiff of an impartial ... proceeding."  (Compl. ¶ 274.)

Plaintiff was sanctioned to 10 days in disciplinary segregation plus 10 days of a previously

suspended sanction.  (Defs.' Stmt. Material Facts Not in Dispute ¶ 54.)

Plaintiff has not stated a procedural due process claim.  As discussed above, SHU

sentences of less than 101 days do not implicate a liberty interest unless they are served under

conditions more severe than normal SHU conditions.  *Palmer*, 364 F.3d at 65.  Here, Plaintiff has

alleged no such conditions.

Even if Plaintiff had alleged the existence of a liberty interest, the complaint does not

plausibly suggest the Plaintiff failed to receive all the process that was due.  Due process is

satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the

charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and

present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written

statement of the disposition, including the evidence relied upon and the reasons for the

disciplinary actions taken.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356

F.3d 481, 487 (2d Cir. 2004).  In some circumstances, such as where the inmate is illiterate or

where the complexity of an issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, an inmate may also be entitled to assistance from another inmate or from prison staff in preparing his defense. *Wolff*, 418 U.S. at 570. Assistance is also required where the prisoner has been transferred between facilities or confined to the SHU. *Eng v. Coughlin*, 858 F.2d 889 (2d Cir. 1988). Plaintiff does not allege that Defendants failed to meet any of these requirements. Moreover, prison records show that the *Wolff* requirements were satisfied. (Defs.' Stmt. Material Facts Not in Dispute ¶¶ 29, 44.) Therefore, I recommend that these claims be dismissed.

### T.    Miscellaneous Claims

Plaintiff's complaint contains a number of other miscellaneous claims.

Plaintiff alleges that he appealed a grievance to the Regional Director in which he argued that a disciplinary conviction was invalid because the incident report was not signed. (Compl. ¶¶ 231-32.) Plaintiff alleges that upon reading his appeal, unnamed "regional officials contacted ... Ray Brook officials and informed them that ... Plaintiff is [alleging] ... that the reporting staff member failed to sign his name." (Compl. ¶ 233.) Upon receiving this report, unnamed Ray Brook officials "deceitfully devised a stratagem to obtain the copy of the unsigned incident report presently in the Plaintiff's possession." (Compl. ¶ 234.) This allegation fails to state a claim against any of the Defendants named in Plaintiff's complaint because it does not identify the "officials" involved. Therefore, I recommend that this claim be dismissed.

Plaintiff alleges that Defendant Liberty "willfully failed" to record injuries that Plaintiff received from the rough application of restraints. Plaintiff alleges that Defendant Liberty did so "out of spite and in an attempt to impede the United States in its investigation of the incident and

the Plaintiff's injury in furtherance of the conspiracy."  (Compl. ¶ 318.)  The evidence shows that Defendant Liberty did, in fact, record the fact that Plaintiff reported that "the officer hurt my wrist when he put on handcuffs," that Plaintiff rated his pain as a 1 out of 10, and that Plaintiff had a 2mm abrasion on his right wrist.  (Miller Decl. ¶ R.)  Therefore, I recommend that this claim be dismissed.

Plaintiff alleges that when he informed Defendant Snyder that he was suffering from headaches and asked to see medical staff to obtain a refill of his prescription medication, Defendant Snyder "conducted a medical evaluation on the Plaintiff and informed the Plaintiff ... that he will immediately contact the medical staff ... The medical staff willfully failed to diagnose the Plaintiff or provide him with his prescribed medication."  (Compl. ¶ 265.)  This allegation does not state a claim against Defendant Snyder.  Therefore, I recommend that it be dismissed.

Plaintiff alleges that he "was informed by several inmates ... of the administrative remedy filings that he had previously filed against ... Ray Brook officials [for] misconduct."  (Compl. ¶ 95.)  Plaintiff alleges that this shows that Defendant Gonyea "negligently failed to provide a confidential administrative remedy program out of spite in an attempt to deceitfully manipulate a threat against the Plaintiff's safety and well-being."  *Id*.  The facts alleged in the complaint do not plausibly suggest that Defendant Gonyea violated Plaintiff's constitutional rights.  Therefore, I recommend that this claim be dismissed.

Plaintiff alleges that Defendant Baker threatened to return "his mail to the mail room as 'Unclaimed Mail' if the Plaintiff fail[ed] to pick up his mail during mail call."  (Compl. ¶ 153.)  The facts alleged in the complaint do not plausibly suggest that Defendant Baker violated Plaintiff's constitutional rights.  Therefore, I recommend that this claim be dismissed.

Plaintiff alleges that Defendant Darrah gave Plaintiff's mail to another inmate, began requiring inmates to present identification at mail call, refused to give Plaintiff his mail one day, and confiscated some "petty items" from Plaintiff's cell. (Compl. ¶¶ 142-43, 151-52, 154.) As Defendants correctly note (Defs.' Br. at 52-53), the facts alleged in the complaint do not plausibly suggest that Defendant Darrah violated Plaintiff's constitutional rights. Therefore, I recommend that these claims be dismissed.

Plaintiff alleges that Defendant Goddeau arrived at the 12-man dormitory one day and informed the inmates there that the smoke alarm had been triggered because inmates were smoking. (Compl. ¶ 103.) The facts alleged in the complaint do not plausibly suggest that Defendant Goddeau's announcement violated Plaintiff's constitutional rights. Therefore, I recommend that this claim be dismissed.

Plaintiff alleges that Defendants Baker and Fitzgerald observed Defendant Halladay throwing property from Plaintiff's cell. (Compl. ¶ 190.) Law enforcement officials can be held liable under § 1983 for not intervening in a situation where another officer is violating an inmate's constitutional rights. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted). A state actor may be held liable for failing to prevent another state actor from committing a constitutional violation if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Id.* (citation omitted); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) ("Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability."). Here, the complaint does not plausibly suggest that a reasonable person in the

68

officer's possession would know that Plaintiff's constitutional rights were being violated because the Fourth Amendment's proscription against unreasonable searches and seizures does not apply *at all* within the confines of a prison cell.  *Hudson v. Palmer* 468 U.S. 517, 526 (1984); *Demaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights."), *aff'd*, 122 F.3d 1055 (2d Cir. 1995). Therefore, I recommend that this claim be dismissed.

Plaintiff names the Bureau of Prisons as a Defendant but does not make any specific claims against it.  (Compl. ¶ 6.)  *Bivens* actions against the Bureau of Prisons are barred by the doctrine of sovereign immunity.  *Sereika v. Patel*, 411 F. Supp. 2d 397, 402 (S.D.N.Y. 2006). Therefore, I recommend that the Court *sua sponte* dismiss any claims against the Bureau of Prisons.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss or for summary judgment (Dkt. No. 79) be **GRANTED IN PART AND DENIED IN PART**.  I recommend that all of Plaintiff's claims be dismissed *except*: (1) the allegations against Defendant Stone in Paragraphs 155-59 of the complaint;(2) the allegations against Defendants Hays and Holts in Paragraphs 56-61 of the complaint; and (3) the allegation against Defendant Miller in Paragraph 242 of the complaint.  I recommend that Defendants be ordered to answer those claims; and it is further

**ORDERED** that the Clerk serve copies of  *Mathie v. Dennison*, No. 06 Civ. 3184, 2007 U.S. Dist. LEXIS 60422, at *31, 2007 WL 2351072, at * 10 (S.D.N.Y. Aug. 16, 2007) and *Liggins v. Parker*, No. 9:04-CV-0966, 2007 U.S. Dist. LEXIS 98713, 2007 WL 2815630, at * 16 (N.D.N.Y. Sept. 25, 2007) on Plaintiff in accordance with the Second Circuit's decision in

*LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: September 30, 2009
      Syracuse, New York

George H. Lowe
United States Magistrate Judge